IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRUCE GALVAN, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3365 |
| | § | |
| THE SALVATION ARMY, | § | |
|     Defendant. | § | |

## **MEMORANDUM AND ORDER**

This personal injury case is before the Court on the Motion for Partial Summary Judgment Regarding Defendant's Affirmative Defense of Release ("Release Motion") [Doc. # 23] filed by Plaintiffs Bruce Galvan and Cynthia Perez.  Defendant filed an Opposition [Doc. # 27], and Plaintiffs filed a Reply [Doc. # 28].  Also pending is Plaintiffs' Motion for Partial Summary Judgment Regarding Defendant's Defense of The Charitable Immunity and Liability Act of 1987 ("Charitable Immunity Motion"), to which Defendant filed an Opposition [Doc. # 29], and Plaintiffs filed a Reply [Doc. # 34].  Having reviewed the full record and having considered relevant legal authorities, the Court **grants** the Release Motion and **denies without prejudice** the Charitable Immunity Motion.

## I.     FACTUAL BACKGROUND

Plaintiffs Bruce Galvan and Cynthia Perez are parents of Plaintiff Christopher Galvan. Christopher was eleven years old when he attended Camp Hoblitzelle, a facility owned and operated by Defendant The Salvation Army. In June 2010, while at Camp Hoblitzelle, Christopher Galvan fell 40-50 feet from a zip-line and was seriously injured. Before Christopher attended Camp Hoblitzelle, Cynthia Perez signed a "Permission/Waiver Form for Residential Camps." *See* Exh. A to Release Motion.

Plaintiffs filed this lawsuit seeking to recover from The Salvation Army for the injury to Christopher Galvan. Defendant has asserted the existence of the Release as an affirmative defense. Defendant has asserted also that The Charitable Immunity and Liability Act of 1987 ("Charitable Immunity Act") limits its liability in this case to $500,000.00 per person and $1,000,000.00 per occurrence. Plaintiffs have moved for summary judgment on each of these arguments. The motions have been fully briefed.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential

to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record. *See Trevino v. Yamaha Motor Corp.,* 882 F.2d 182, 184 (5th Cir. 1989).

**III.     RELEASE MOTION**

Defendant has asserted the existence of the Release signed by Cynthia Perez as an affirmative defense. Plaintiffs argue that they are entitled to summary judgment on the release defense because the Release in this case fails to satisfy the requirements for it to be enforceable.

Under Texas law, there are two fair notice requirements for release agreements: (1) the express negligence doctrine and (2) the conspicuousness requirement. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004); *Dresser*

*Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 509 (Tex. 1993). The express negligence doctrine requires that a party's intent to be released from the consequences of that party's own negligence must be expressed in specific terms within the four corners of the release document. *See Fisk Elec. Co. v. Constructors & Assoc., Inc.,* 888 S.W.2d 813, 814 (Tex. 1994); *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex. 1987). The conspicuousness requirement provides that the releasing language must be conspicuously written, such that a reasonable person would have noticed it. *See Dresser,* 853 S.W.2d at 511. Examples of conspicuous language include language that appears in contrasting type or color, in all capital letters, or otherwise calls attention to itself. *See Reyes,* 134 S.W.3d at 192 (citing *Littlefield v. Schaefer*, 955 S.W.2d 272, 274–75 (Tex. 1997)); *Dresser,* 853 S.W.2d at 511.

Compliance with the fair notice requirements is a question of law for the Court. *Dresser*, 853 S.W.2d at 509. A release that fails to satisfy both of the two requirements is unenforceable as a matter of law. *Storage & Processors*, 134 S.W.3d at 192. In this case, the Court concludes that the Release asserted by Defendant does not satisfy either requirement.

The Release provides that the signer "hereby voluntarily releases The Salvation Army from any and all liability resulting from or arising in any manner whatsoever out of any participation in any Activity." *See* Release, Exh. 1 to Release Motion. As

an initial matter, the Release purports to release Defendant from liability for injury suffered while participating in any "Activity." The "Activity" is to be identified by filling in a blank line on the Release form. On the Release at issue in this case, the "Activity" line contains no identified activity but, instead, has "Cynthia Perez" written in as the "Activity."

More importantly, the Release language does not specifically state that Defendant is being released from liability for its own future negligence. Indeed, there is no express mention of negligence at all. Although there is no requirement that the release contain the specific word "negligence," the intent to release a party from liability for its own negligence must be clearly expressed. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989); *Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 290 (Tex. App. – Beaumont 2005, review denied). In the Release at issue in this case, there is no clear expression of an intent to release Defendant from its own negligence in connection with Christopher Galvan's participation in zip-lining.

The Release fails also to satisfy the conspicuousness requirement. The release language is in the same font and font size as the remainder of the document. There is no bolding, underlining, or other mechanism to make the release language

conspicuous. Instead, the release language is buried in a full page of single-spaced, small font size text.

The Court concludes that the Release in this case does not satisfy the express negligence or conspicuousness requirements and, as a result, the Release is not enforceable as a matter of law.

## IV.   CHARITABLE IMMUNITY MOTION

The Charitable Immunity Act limits liability of a qualified charitable organization to $500,000.00 per person and $1,000,000.00 per occurrence. *See* TEX. CIV. PRAC. & REM. CODE § 84.006. To qualify for the limitation, the charitable organization must have liability insurance coverage "in the amount of at least $500,000 for each person and $1,000,000 for each single occurrence for death or bodily injury . . .." *See* TEX. CIV. PRAC. & REM. CODE § 84.007(g). The Charitable Immunity Act provides that the liability insurance coverage "may be provided under a contract of insurance or other plan of insurance authorized by statute and may be satisfied by the purchase of a $1,000,000 bodily injury and property damage combined single limit policy." *See id.*

Defendant asserts that it is entitled to the damages limitation of the Charitable Immunity Act. It is undisputed that Defendant has over $35,000,000.00 of insurance coverage. It is also undisputed, however, that the first $500,000.00 is in the form of

a self-insurance retention and the next $4,500,000.00 is in the form of The Salvation Army's Risk Trust. Plaintiffs argue that Defendant is not entitled to the damages limitation because Defendant is self-insured and self insurance does not meet the statutory requirement of the Charitable Immunity Act.[1]

Plaintiffs in this case have not alleged an amount of damages. They allege that the amount in controversy is in excess of $75,000.00. *See* Amended Complaint [Doc. # 16], ¶ 1. Plaintiffs allege also that Christopher Galvan's medical bills exceed $200,000.00. *See id.*, ¶ 5. Thus, on this record, the specific amounts alleged by Plaintiffs do not exceed the Charitable Immunity Act's limitation. Moreover, the amount of damages has not been established by either settlement or a jury award to be in excess of the Charitable Immunity Act's limitation. As a result, the Court concludes that a decision on whether the limitation applies to a fully-funded self insurance retention is premature at this stage of the proceedings. *See, e.g., Morgan v. Fellini's Pizza, Inc.*, 64 F. Supp. 2d 1304, 1316, n.6 (N.D. Ga. 1999) (noting that a request for summary judgment as to whether a damages cap applies was premature); *Rafferty v. Howard*, 2010 WL 3768142, *1 (S.D. Miss. Sept. 20, 2010) (holding that

---

[1] Plaintiffs also argue that Defendant is judicially estopped to assert the Charitable Immunity Act's limitation because a different Salvation Army entity in Maine asserted in a lawsuit in 1997 that the Salvation Army entity in Maine did not have insurance coverage. The Court concludes on this limited record that Plaintiffs have not established an adequate factual basis for judicial estoppel to apply.

preliminary ruling on whether statutory cap applies was premature). If there is a settlement or jury verdict for more than $1,000,000.00 in this case, the Court will at that time decide whether Defendant qualifies for the Charitable Immunity Act's limitation.

Additionally, the Charitable Immunity Act provides that its limitations do not apply "to an act or omission that is intentional, wilfully negligent, or done with conscious indifference or reckless disregard for the safety of others." *See* TEX. CIV. PRAC. & REM. CODE § 84.007(a). Plaintiffs specifically allege that Defendant's actions in this case were "intentional, willfully negligent, or done with conscious indifference or reckless disregard for the safety of Christopher Galvan and others." *See* Amended Complaint [Doc. # 16], ¶ 12. Should the jury find that Defendant's actions were as alleged by Plaintiffs in paragraph 12 of the Amended Complaint, the issue regarding whether self-insurance satisfies the insurance requirement of the Charitable Immunity Act would become moot.

## V. <u>CONCLUSION AND ORDER</u>

The release relied upon by Defendant satisfies neither the express negligence doctrine nor the conspicuousness requirement. As a result, there has been no effective release of Defendant for its alleged negligence in this case. Plaintiffs have not alleged an amount of damages and no amount of damages has been determined either through

settlement or by jury verdict.  As a result, it is premature to decide whether the Act limits the amount of damages recoverable in this case.  It is, therefore,

**ORDERED** that Plaintiffs' Release Motion [Doc. # 23] is **GRANTED** and Plaintiffs' Charitable Immunity Motion [Doc. # 26] is **DENIED WITHOUT PREJUDICE** as premature.

SIGNED at Houston, Texas this 3rd day of **May, 2011**.

_____
Nancy F. Atlas
United States District Judge